# MILLVILLE TRACTION COMPANY

### *v.*

## EUGENE B. GOODWIN et al.

1. In the absence of municipal authority regulating the use of streets in which street railways have been constructed under the law and city ordinances, and are in daily use, by persons who claim the right to use such streets in a manner which will necessarily interfere with the running of the cars on such railways, or with the appliances constructed to propel such cars, that a court of equity will, when called upon, restrain a party claiming such right from interfering with or obstructing the usual and ordinary running of the cars of such street railway.

2. In the absence of authority for that purpose, the president of a street railway company cannot contract with a third party, so as to bind the company, to suspend the running of its cars and the cutting or the elevation of its wires so that such party may move a large building upon and along its tracks one hundred and eleven feet or more, in order to cross the same.

Hearing on order to show cause &c.

*Mr. Walter H. Bacon,* for the complainant.

*Mr. John S. Mitchell,* for the defendants.

BIRD, V. C.

The complainant asks that the defendants may be restrained from cutting wires by means of which its cars are propelled, and from otherwise interfering with the running of said cars. The complainant shows by its bill its organization and the right to exercise the franchises of constructing and maintaining its road on the street in the city of Millville. It shows that the defendants threatened to cut and interfere with the wires by means of which its system is maintained. It shows, also, the actual obstruction, by means of chains and other appliances, to the propulsion of the cars along its tracks at a place designated. This threat and this obstruction are occasioned by the effort of the defendants to move a large two-and-a-half-story frame building from one locality in the city of Millville to another. In order to reach the latter place they must cross the track and carry the building for one hundred and eleven feet along and over the track of the company. The highest point or peak of the building is twelve feet above the main or feed wire of the company's structure. In order to cross the track with the building it is necessary to carry the building along the track at least one hundred and eleven feet. The complainant insists that this will take at least two days.

. All of these facts are admitted by the defendants, except the threat to cut the wires and the length of time required to carry the building from one street to another along and over the tracks of the company. The defendants insist that the time required to carry the building from the one street to the other over the tracks of the company will not exceed seven or eight hours. They insist that this will not interfere with the running of the cars, because they can do this work between the time the company ceases to run their cars, at about eleven o'clock at night, and

the time they begin to run them the next morning, or within a very short time thereafter.

Besides these denials and this assertion of the length of time which will be required, the defendants allege that the president of the company expressed not only a willingness that the building might be so moved, but that the company would so far assist in the work of moving the building as to elevate the wires, that the building might have free course. This allegation is not denied by the president.

First, have the defendants the right which they claim to occupy the streets upon which this road is located, for the purpose required at all events, in case in moving the said building they interfere with the running of the cars of the company? Under the circumstances of this case, I find myself obliged to answer this question in the negative. Let us ascertain the true status of these parties. The complainant is by the admission of the defendants in the enjoyment of an unquestioned right. It may move its cars at all times according to its own pleasure, except so far as others who have a lawful right to use the highway may find it necessary so to do, provided they do so in a reasonable manner. The rights which the railroad company thus enjoy are secured to them by the law and the action of the city authorities. These rights it is entitled to be protected in as fully as other citizens are entitled to be protected in their right to use said streets for the purpose of travel in and by the ordinary means used for that purpose. Because of the privileges thus secured to it by the law and the action of the city authorities, the company has invested its money and they thereby perfected obligations which the constitution says shall not be impaired.

The defendants propose to occupy the highway not for the purpose of ordinary travel or communication, but for the purposes of removing a very large frame building, to do which nearly the entire street is occupied. This, it must be admitted, is an obstruction of the street. It certainly interferes more or less with ordinary travel, but the question is not whether or not they may so occupy the street in case by so doing they do not become

Millville Traction Co. v. Goodwin.

a nuisance to others who desire and have a lawful right to use the streets for the purposes for which they are established, but the question is, whether or not they have a right in using the street to prevent the company from the full, free and complete exercise of the franchises with which it is clothed. I think the statement of the question brings with it the correct answer. While all persons ordinarily have a right to use the street to the same extent with the car company, yet they have no right unduly or unreasonably to occupy the street and so to prevent the passage of trains. It is well settled that for all ordinary domestic purposes, such as loading or unloading coal or wood or the performance of other similar acts in connection with the household of abutting landowners, it may be necessary to suspend the moving of trains, but at most these things are of short duration and occasion only a limited suspension of travel. And one of the very great objects of the creation of streets or highways is obtaining access to dwellings for such purposes.

The claim of the defendants is that they have the right to occupy the streets in moving the house of Goodwin to such an extent or for so long a period of time as may be necessary for that purpose, irrespective of the inconvenience to the railroad company, or interference with the regular and ordinary use of its tracks in running its cars. This is manifest by the admission, in the answer, of the manner in which they stretched their chain and other appliances across the track of the railroad, in order to move the building, thereby at once preventing the regular, continuous running of the cars. Evidently this is an extraordinary use of the streets, and if every citizen should make similar claims, and there should be frequent demands therefor, there would be constant friction between the citizens and our streets would be constantly obstructed by the moving of ponderous bodies, unless they were widened greatly beyond their present limits. Hence, I conclude, in the absence of municipal authority regulating the use of streets in which street railways have been constructed under the law and city ordinances, and are in daily use by persons who claim the right to use such streets in a manner which will necessarily interfere with the running of

the cars on such railways, or with the appliances constructed to propel such cars, that a court of equity will, when called upon, restrain a party claiming such right from interfering with or obstructing the usual and ordinary running of the cars of such street railway.

Is the complainant estopped because of the consent said to have been given by the president and his offer to elevate the wires for the more convenient passage of the building? It appears that this consent was given after the purchase of the house by the defendant Goodwin. The house having been purchased at a cost of $25, the defendant Goodwin asked the president of the road for permission to cross the track in moving the building to the place desired. The building was then placed upon rollers. About this time, certainly before it had been moved any considerable distance, the president of the company assured Goodwin, or Barnes, his agent, that he could not cross the track with the building and that he would not permit it unless he was compelled so to do.

In considering whether the company is estopped because of what the president said, it must first be determined whether or not the president was authorized to give any such consent and thereby bind the company. It is quite plain that the burden of showing this authority is upon the defendants. It is not shown. Is it within the scope of his general authority? There is no pretence that the removal or transportation of buildings, or any work of a like nature, is part of the business of the railroad company. Indeed, the right of an officer of the railroad to engage the company in any such transaction is so clearly without foundation that it does not admit of argument. The cases which have been cited by the defendants' counsel, with respect to the agency of the officers of corporations, have been very carefully considered, but there is not the slightest authority in any of them sustaining the views maintained by counsel for defendants.

My conclusion is that the defendants should be restrained from interfering with or obstructing the usual and ordinary movement of the complainant's cars in moving the house or building mentioned and referred to in the bill of complaint. This places the

defendants upon the same level with every other citizen. It gives to them no preferences. Other citizens have not the right in traveling across or along streets occupied by the complainant company with its tracks so as to suspend or interfere for an unreasonable length of time with the running of its cars. This is only securing to the complainant the rights or privileges which have been granted to them by the law and the city authorities.

And it must not be forgotten that all the citizens of the locality who desire to use the cars of the company are interested in this question and have the right to be carried along its tracks in its cars without undue or unreasonable molestation or detention. Indeed, so important is this that the city authorities, in granting the privilege, required of the company that it should run a given number of trains, and in case of failure so to do, certain severe penalties can be imposed.

Upon the argument much was said respecting the right to occupy the streets of a city in moving a building along them. I have not found it necessary to decide this question ; nor have I considered what rights or privileges might be conferred by the city authorities in this behalf, in case of conflicting claims of right; nor how far such authorities might regulate the moving of such buildings along or across railroad tracks, and to that end subject any of the appliances of railroad companies to such temporary changes as might be deemed essential. It is also proper to say that I have not considered what aid the court might properly render to a citizen desiring any particular or special use of a street occupied by a railroad company, in case such citizen should make application to the court for that purpose. In the present case, I could not look into the question because there was no cross-bill, with proper allegations and prayers for any such investigation. When these particular issues are presented in due form they can be disposed of, as nearly as possible, as the principles of justice and equity may require.

I will advise that the defendants be restrained as above indicated.